**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHRISTOPHER J. DOTY**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 12-1562-DEK**

**MARLIN GUSMAN, ET AL.**

## <u>ORDER AND REASONS</u>

Plaintiff, Christopher J. Doty, filed this civil action pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, Warden Carlos Louque, Warden C. Golini, Warden Kevin Winnfield, Medical Administrator Samuel Gore, and Assistant Medical Director J. Ham.  Plaintiff claims that he was not given adequate medical care for a vision problem while incarcerated within the Orleans Parish Prison system, and, as a result, suffered an irreversible loss of vision.

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  Plaintiff has opposed that motion,[2] and the defendants have filed a reply to that opposition.[3]  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[4]

---

[1]   Rec. Doc. 22.

[2]   Rec. Doc. 27.

[3]   Rec. Doc. 30.

[4]   Rec. Doc. 16.

## I.  Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather,  "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary

2

judgment.  Id.; Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Moreover, "summary judgment is appropriate in any case where critical evidence is so weak or

tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little

v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation

marks omitted).

## II.  Plaintiff's Claim

In his complaint, plaintiff makes the following allegations in support of his claim.  He states

that, while he was incarcerated within the Orleans Parish Prison system, he complained of problems

with his eyes.  Specifically, he was experiencing pain, headaches, eye strain, and progressively

worsening vision.  He repeatedly requested prescription eyeglasses but was told that only

nonprescription reading glasses would be provided.  Eventually, his vision deteriorated to the point

at which he was bumping into others and having trouble recognizing people.  Finally, a nurse

checked his medical records and told him that he had twice been denied a referral to the hospital for

an evaluation.

After approximately seven months of incarceration, he was prescribed pain medication and

referred to the LSU Medical Center ("LSUMC").  At the hospital, he was diagnosed with glaucoma.

The doctors told him that his vision could have been saved if he had be brought in earlier; however,

due to the delay, there had been irreversible damage, resulting in approximately 80% of his vision

being lost.  He was prescribed medication and eyeglasses.  Upon his return to the prison, he was

again informed that he would not be provided with prescription eyeglasses.

In their motion, the defendants "do not deny th[e] allegation" that plaintiff was denied prescription eyeglasses due to a prison policy.  They argue, however, that plaintiff's constitutional rights were not violated because he "was given excellent, consistent, and frequent medical attention" while in their custody.

This Court need not determine the accuracy of the defendants' representation that plaintiff's medical care was "excellent," because excellence was not constitutionally required.  On the contrary, a prisoner's federal constitutional right to medical care is extremely limited.  For example, the federal constitution does not require that inmates receive optimal care.  Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978); see also Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) (noting that only "reasonable care" is required and the fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation).  In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice.  Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).

Rather, the federal constitutional rights of an incarcerated person, regardless of whether he is a pretrial detainee or a convicted prisoner, are violated only if his *serious medical needs* are met with *deliberate indifference* on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). "A serious medical need is one for which treatment has been recommended or for which the need

4

is so apparent that even laymen would recognize that care is required." Gobert, 463 F.3d at 345 n.12.  The defendants wisely do not argue that glaucoma fails to rise to the level of a "serious medical need."  It does.  See, e.g., Cox v. District of Columbia, 834 F. Supp. 439, 441 (D.D.C. 1992).  The defendants instead argue that plaintiff cannot demonstrate that they acted with "deliberate indifference."  For the following reasons, the defendants are correct on that point.

As to the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

To rebut plaintiff's allegation of deliberate indifference, the defendants point to his medical records.  Those records show that, over the course of his entire period of incarceration, plaintiff did in fact receive treatment for his eye condition.  He does not dispute that fact; however, he counters that many of those records are not relevant to his claim.  In his opposition to the defendant's motion, he clarified that his claim is *not* that he was *never* provided care at any point; rather, his claim is

limited to the care (or lack of care) he received *prior* to his examination at LSUMC.  He notes, therefore, that the "[m]edical care provided subsequent to plaintiff's initial hospital exam is mostly irrelevant to plaintiff's Complaint of inadequate, denied, or delayed treatment for his eye condition."[5]  The Court considers that clarification to be part of his complaint[6] and, as he suggests, will look only to the care he received prior to his examination at the LSUMC on November 22, 2011.

Turning to plaintiff's medical records, very few of those records prior to November 22, 2011, concern his eye problems.  The first reference to an eye problem is found in the notes prepared by Kimberly Pounds, a nurse practitioner, on May 19, 2011.  Those notes reflect that plaintiff was examined on that date for an earache; however, during the visit, he also complained of decreased vision.  As a result, it was ordered that he be screened for reading glasses.[7]

The next such record is a sick call request collected from plaintiff on September 22, 2011, in which he stated:  "Can't see at a distance.  I have received reading glasses but I can't hardly see otherwise.  Everything past 5 feet is blurry, request to see doctor for referral to hospital."  The LPN

---

[5]     Rec. Doc. 27, p. 3.

[6]     The United States Fifth Circuit Court of Appeals has held that in a case filed by a *pro se* plaintiff, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed."  Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983).  Therefore, a *pro se* litigant's supplemental filings that "embellish[] the original complaint's averments" should be considered when ruling on dispositive motions.  Id. Accordingly, plaintiff's opposition is properly considered part of the complaint in this matter and will be considered in connection with the instant motion.

[7]     Rec. Doc. 21, p. 25.

who collected the form noted that plaintiff would be evaluated to determine whether a referral for an eye examination was needed.[8]

The next such record, dated October 7, 2011, is another document prepared by Pounds.  In that record, she notes that plaintiff was complaining of difficulty seeing and seeking a referral for eyeglasses.  A vision test was performed, showing vision of 20/100 in the left eye and 20/70 in the right, and it was concluded that he was suffering from myopia (i.e., nearsightedness).  However, plaintiff was nevertheless referred to the eye clinic.[9]  The referral request was faxed to the LSUMC Ophthalmology Department that same day.[10]

The last such records concern plaintiff's visit to the LSUMC on November 22, 2011.  Those records show that he was diagnosed with "open angle glaucoma" and treatment was recommended.[11] He was prescribed eye drops and given a prescription for eyeglasses.[12]

Deliberate indifference clearly cannot be inferred based solely on the foregoing records.  On the contrary, those records show that when plaintiff complained of vision problems, he was given reading glasses to remedy the condition.  Approximately four months later, he submitted the sick call request stating that the reading glasses were proving inadequate.  In response, he was then examined in the prison medical department approximately two weeks later, a seemingly reasonable

---

[8]   Rec. Doc. 21, p. 31.

[9]   Rec. Doc. 21, p. 20.

[10]   Rec. Doc. 21, p. 51.

[11]   Rec. Doc. 21, p. 50.

[12]   Rec. Doc. 21, p. 52-53.

delay for what at that point appeared to be a nonemergency condition.  Although the nurse practitioner ultimately determined that plaintiff was merely nearsighted, she nevertheless sent a referral that very same day to the LSUMC to request an appointment for him.  The appointment was apparently scheduled for approximately six weeks later, which, again, does not seem to be an inappropriate delay for an appointment with a specialist for a nonemergency condition.  He was in fact transported for that appointment and a correct diagnosis was then obtained.

Those records therefore do not support an allegation that plaintiff's medical complaint was ignored or that he was refused treatment; rather, they indicate that he received reasonably prompt evaluations and treatment.  While the nurse practitioner's initial diagnosis (myopia) ultimately proved to be wrong, and while the initial treatment for myopia was unsuccessful and the delay of treatment for the correct diagnosis (glaucoma) unfortunately resulted in irreversible damage, there is no evidence that plaintiff was intentionally misdiagnosed or provided with incorrect treatment. The records belie any allegation of deliberate indifference, because federal constitutional protections are not violated simply because an inmate's  treatment was unsuccessful or because pain persisted despite the treatment.  Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).  While misdiagnosis or incorrect treatment might in some circumstances amount to negligence or medical malpractice, claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble,

429 U.S. 97, 107 (1976); Irby v. Cole, 278 Fed. App'x 315, 316 (5th Cir. 2008); Holloway v.

Oguejiofor, 166 Fed. App'x 751, 753 (5th Cir. 2006); Cerna, 2004 WL 42602, at *2.

      Plaintiff argues, however, that it would be inappropriate for this Court to dismiss his claims

based solely on the foregoing evidence.  He opines that the medical records do not present an

accurate picture of his case because they are incomplete.  Specifically, he alleges that both he and

his counsel requested additional evaluation and treatment between May 19, 2011, and September

22, 2011.[13]  However, plaintiff's allegation concerning his counsel is entirely unsubstantiated, and

"[n]eedless to say, unsubstantiated assertions are not competent summary judgment evidence."

Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  The Court also notes that

plaintiff specifically alleges that he submitted an additional sick call request dated June 14, 2011,

and attached a copy of that request to his initial complaint.[14]  However, the defendants state that no

copy of that request can be found in his prison records, and they question its authenticity.[15]  Plaintiff

counters that, at the time that sick call request was submitted, he was incarcerated in the House of

Detention, a unit of the prison system which was subsequently closed.  He opines that the disarray

which is purported to have reigned at the House of Detention could have resulted in his sick call

request being destroyed or unduly delayed by an unknown person.[16]  However, *even if* that occurred,

it would not change the result in this case.  There is simply no evidence that the named defendants

---

[13] Rec. Doc. 27, pp. 3-4

[14] Rec. Doc. 3, pp. 10-11.

[15] Rec. Doc. 22-1, p. 10.

[16] Rec. Doc. 27, p. 4.

were ever aware that the sick call request had been submitted, and they cannot be found to have been deliberately indifferent to a problem of which they were unaware.

In summary, the Court notes that, due to a misdiagnosis of a serious medical condition, plaintiff has apparently suffered a tragic, irreversible loss of vision while incarcerated.  However, while a claim based on such an unfortunate turn of events might be actionable under state law, which is an issue this Court need not and does not reach, there is simply no evidence that the named defendants here acted with the deliberate indifference required for an actionable federal claim.[17] Therefore, they are entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** and that plaintiff's federal civil rights claims pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this third day of April, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[17] There is no indication in the complaint that plaintiff intended to assert any claims under state law in this federal proceeding.  However, even if that had been his intention, the Court would decline to consider any such claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").  If plaintiff wishes to pursue claims under state law, he must do so in the state courts.

10